UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| DOYLE M. VALANDRA, | * | CIV 09-3014-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| -vs- | * | AFFIRMING FINAL DECISION |
| | * | |
| MICHAEL J. ASTRUE, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

Plaintiff seeks reversal of Defendant's decision denying Plaintiff's application for social security disability insurance and attendant Medicare benefits. Alternatively, Plaintiff requests the Court to remand Defendant's decision for a hearing on all of the issues now raised by Plaintiff. For reasons explained, this Court affirms the final decision of the Commissioner of Social Security.

I. Facts

A. Procedural Background

On October 21, 2005, Plaintiff filed an application for disability insurance benefits alleging that he had been unable to work since June 2, 2003, as the result of a lower back injury Plaintiff sustained while employed as a heavy equipment operator. (A.R. 60-62, 512). The Social Security Administration denied Plaintiff's application initially (A.R. 48-50) and on reconsideration (A.R. 45-46). Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (A.R. 44, 41-42).

After conducting a hearing on May 27, 2008, the ALJ concluded that "Plaintiff was 'disabled' within the meaning of the Social Security Act from June 2, 2003 through October 3,

2005." (A.R. 15). The ALJ found that this period of "disability" ended on October 4, 2005, however, due to "medical improvements," that enabled Plaintiff to perform "substantial gainful activity." (A.R. 15-27). Following the ALJ's decision, the Appeals Council denied Plaintiff's request for review. (A.R. 6-8).

**B. Factual Background**

Plaintiff was born on December 8, 1966. He dropped out of school in the tenth grade, but later obtained his GED. (A.R. 798). At the time of Plaintiff's May 27, 2008 hearing, he had been in a relationship with Becky Ritter, a school teacher, for twenty years. (A.R. 550, 823). Prior to becoming disabled, Plaintiff worked as a heavy equipment operator, auto mechanic, treatment plant mechanic, security guard, ranch hand, and cashier at a pawn shop. (A.R. 149-50, 154). Plaintiff has never completed any vocational school or received any special job training. (A.R. 99, 798).

On July 15, 2002, Dr. Rand Schleusener performed an L4-5 microdiscectomy on Plaintiff in an attempt to treat Plaintiff's back and radiating leg pain. (A.R. 392, 513). Plaintiff did "quite well" following the surgery, but re-injured himself on June 2, 2003, while changing the hydraulics on a front-end loader. (A.R. 512). An MRI showed that Plaintiff had a recurrent disc herniation at L4-5. Dr. Schleusener performed another microdiscectomy on Plaintiff on July 21, 2003. (A.R. 345-46). The July 21, 2003 surgery did little to relieve Plaintiff's significant back pain, however, and after trying more conservative treatment options Plaintiff underwent an L4-5 discectomy and fusion surgery on August 9, 2004. (A.R. 470-506, 231-32).

Despite the L4-5 discectomy and fusion surgery, Plaintiff's pain remained similar to what it was prior to the operation. (A.R. 443, 450, 460, 465). Dr. Schleusener saw Plaintiff regularly

after this third surgery. Although he found in July of 2005 that Plaintiff's lumbar fusion had healed, Dr. Schleusener acknowledged that because of Plaintiff's continuing pain, "we may have to look at chronic pain management." (A.R. 442-443).

On October 4, 2005, Dr. Schleusener concluded that Plaintiff had reached "maximum medical improvement" and that he had a "10% impairment of the whole person." (A.R. 437). In reaching his conclusion, Dr. Schleusener noted that he was "not sure [Plaintiff] was a whole lot better," and released Plaintiff to work with restrictions of "sedentary work with largely some light duty work, [with the ability] to change positions frequently, and no prolonged lifting of more than ten pounds." (A.R. 437).

Various doctors conducted assessments of Plaintiff in relation to his October 21, 2005 application for benefits. In March of 2006, Dr. Kevin Whittle, a non-examining physician, conducted a Physical Residual Functional Capacity Assessment of Plaintiff through review of Plaintiff's medical record. Dr. Whittle found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds. (A.R. 156). Dr. Whittle also concluded that Plaintiff could stand and/or walk for at least two hours and sit for about six hours within one eight-hour workday. (Id.). Additionally, Dr. Whittle found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (A.R. 157).

In June of 2006, Dr. Frederick Entwistle also reviewed Plaintiff's record and completed a Physical Residual Functional Capacity Assessment of Plaintiff. Dr. Entwistle's findings were similar to those of Dr. Whittle, except that Dr. Entwistle precluded Plaintiff from climbing ladders, ropes, and scaffolds, and from "even mild exposure" to work hazards such as machinery and heights. (A.R. 179, 181).

Dr. Cheryl Buchkoski, a state agency psychologist, reviewed Plaintiff's record in March of 2006. Although Dr. Buchkoski did not find that Plaintiff was severely impaired, she did find that Plaintiff was mildly limited in carrying out his daily activities, and in maintaining concentration. (A.R. 163, 175). Dr. Buchkoski also found that Plaintiff had experienced one or two episodes of decompensation. (A.R. 173).

During the May 27, 2008 hearing to consider Plaintiff's application for disability insurance benefits, the ALJ heard testimony from Plaintiff, Becky Ritter, and Jerry Gravatt, a vocational specialist. (A.R. 794). Plaintiff testified that he could only stand for 15-20 minutes at a time and that when he walks, his legs "get real weak and sometimes give out on [him]." (A.R. 800-01). Plaintiff said that he could sit for about 30 minutes at a time, and four times a day he had to lie down for between 45 minutes and an hour to alleviate back pain. (Id.). Plaintiff believed that his back had gotten worse since the 2004 surgery, that recent increases in his pain medication only "took the edge off," and that he still had trouble concentrating. (A.R. 801, 807). Plaintiff also testified that the farthest he could walk without resting was 100 feet, that he could not lift over ten pounds, that he did not participate in any hobbies or sports, and that his typical day consisted of driving into town to get the mail and then watching television while intermittently standing, sitting, or laying down to alleviate his pain. (A.R. 802, 806, 813).

Plaintiff's girlfriend, Becky Ritter, testified that Plaintiff's condition had worsened over the past three years, and that Plaintiff "just keeps losing strength and losing mobility." (A.R. 825, 829). Ritter stated that while she did most of the household chores, Plaintiff fed and watered the couple's dogs, an activity that usually took him about 30 minutes to complete. (A.R. 827). Ritter told the ALJ that although Plaintiff used to be able to walk one quarter mile, he

4

could no longer walk even one hundred yards, and that his legs get weak if he attempts to do so. (A.R. 830).

Vocational expert Jerry Gravatt, who reviewed Plaintiff's file prior to the hearing, also testified. (A.R. 832). The ALJ asked Mr. Gravatt what the national and regional economy offered in terms of jobs for a person of Plaintiff's age, education level, work history, and residual functional work capacity as of October 4, 2005.[1] (A.R. 833-34). In response, Mr. Gravatt said that Plaintiff could work as a machine tender, press operator, or small jewelry assembler. (A.R. 834). Mr. Gravatt also testified that a person performing one of these three jobs would sit approximately six to seven hours a day, and that he was unaware of any sedentary jobs that would allow a person to lie down four times per day for a period of 30 minutes to an hour. (A.R. 838).

After the hearing, the ALJ sent written interrogatories to medical expert Dr. Gayle Humm. (A.R.760-768). Dr. Humm reviewed Plaintiff's medical records and concluded that Plaintiff's impairments did not fall within any of the impairments listed in the Social Security Regulations. (A.R. 761). Dr. Humm also found that Plaintiff could lift and carry up to ten pounds frequently and 11-20 pounds occasionally; could walk, sit, or stand for an hour at a time; could either walk, sit, or stand for six hours total in an eight-hour work day; could continuously reach, handle, finger or pull, and frequently push and pull with both hands; could frequently operate foot controls with both feet; could occasionally climb stairs and ramps, but never ladders

---

[1] The ALJ identified Plaintiff's residual functional work capacity as follows: sedentary work with postural shifts that do not require leaving the work station, occasional climbing of stairs, balancing, stooping, crouching, and crawling with no exposure to heights, ladders, scaffolds, temperature extremes, or operation of dangerous machinery. (A.R. 833-34).

or scaffolds; and could occasionally balance, stoop, kneel, crouch, or crawl. (A.R. 762-65). Humm further found that Plaintiff could tolerate continuous exposure to humidity, wetness, dust, odor, fumes, pulmonary irritants, extreme cold and heat, and vibrations, but that Plaintiff could never tolerate exposure to unprotected heights, moving mechanical parts, or operating a motor vehicle. (A.R. 766). Finally, Dr. Humm stated that Plaintiff could shop, travel without a companion for assistance, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace without a handrail, prepare himself a simple meal, attend to personal hygiene, and sort, handle or use papers/files. (A.R. 767).

## C. The Disability Determination and the Five-Step Procedure

To determine whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation process. The five-step sequential evaluation process as outlined by the Eighth Circuit is: (1) whether the claimant is currently engaged in a "substantial gainful activity;" (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment contained in the listing of impairments (if so, the claimant is disabled without regard to race, age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since his alleged disability onset date of June 2, 2003. (A.R. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "a history of disc herniation, lumbar degenerative disc disease and lumbar degenerative facet disease with a subsequent microdiskectomy [sic] in 2002 followed by a repeat discectomy and fusion after re-injury in 2003, and L4-5 anterior discectomy spacer posterior fusion in 2004, and a chronic pain syndrome." (A.R. 19). The ALJ concluded that these impairments, either individually or in combination, did not meet or medically equal one of the listed disabilities under the third step. (A.R. 20).

After reviewing the medical records, the ALJ determined Plaintiff's residual functional capacity.[2] (A.R. 20-22). The ALJ concluded that from June 2, 2003 through October 3, 2005, Plaintiff was "unable to do sustained work activities in an ordinary work setting on a regular and continuing basis" and was thus under a disability as defined by the Social Security Act. (A.R. 20, 22). In coming to this conclusion, the ALJ found credible Plaintiff's reported limitations, and noted that these limitations were not "inconsistent with his history of multiple procedures and rehabilitation efforts during this time period." (A.R. 20). The ALJ found that this period of disability ended on October 4, 2005, when "medical improvements occurred." (A.R. 22). The ALJ determined that the medical improvements related to Plaintiff's ability to work and that Plaintiff:

> "retained residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except who requires postural shifts that do not require leaving the workstation, who can occasionally climb stairs, balance, stoop, crouch, and crawl,

---

[2] The ALJ must determine the claimant's residual functional capacity before proceeding to step four of the sequential evaluation process. 20 C.F.R. § 404.1520(e).

7

> occasionally reach overhead, and who should not be exposed to heights, ladders, scaffolds, temperature extremes, or operation of dangerous machinery."

(A.R. 22).

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, or functionally limiting effects of pain or other symptoms are not credible beginning on October 4, 2005, to the extent that they are inconsistent with the residual functional capacity assessment. . ." (A.R. 23).

## II. Standard of Review

When considering an ALJ's denial of social security benefits, a district court must determine whether the ALJ's decision "complies with the relevant legal requirements and is supported by substantial evidence as a whole." Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009) (quoting Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" Pate-Fires, 564 F.3d at 942 (quoting Maresh v. Barnhart, 438 F.3d 897, 898 (8th Cir. 2006)). A district court must "consider both evidence that supports and evidence that detracts from the Commissioners's decision." Pate-Fires, 564 F.3d at 942 (citations omitted). Additionally, "[a]s long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (internal citations omitted).

## III. Discussion

8

## A. Severe Impairments

Plaintiff contends that he was prejudiced by the ALJ's failure to develop evidence of severe impairments at step two of the five-step sequential evaluation process. Specifically, Plaintiff claims that the ALJ should have considered Plaintiff's alleged right-eye blindness. In the Eighth Circuit, "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden of the case." Snead v. Barnhart, 360 F.3d 834, 837 (8th Cir. 2004). An ALJ is under no obligation, however, "to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996) (quoting Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993)). While the administrative record in this case contained medical documents referencing Plaintiff's alleged right-eye blindness, Plaintiff neither mentioned the blindness on his application for benefits, nor offered it at the hearing as a basis for finding disability. The ALJ's step-two determination was thus proper, and the ALJ was not required to further investigate Plaintiff's right-eye blindness.

## B. Substantial Evidence Supporting the ALJ's Step Three Findings

At step three of the sequential evaluation process, the ALJ must determine whether a claimant has any impairment that meets or equals an impairment described in the Social Security Act's Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff's impairments did not meet or equal a listed impairment. Specifically, Plaintiff claims that his spinal impairment meets or equals the elements of Listing 1.04.

"The burden of proof is on the plaintiff to establish that his or her impairment meets or

equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004) (citations omitted). "To meet a listing, an impairment must meet all of the listing's specified criteria." Id. (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify.")). A mere diagnosis of an impairment for which there is a listing does not by itself establish that the impairment meets the listing. Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). "'Medical equivalence must be based on medical findings.'" Johnson, 390 F.3d at 1070 (quoting 20 C.F.R. § 416.926(b)). An impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

The specified criteria for 20 C.F.R. Pt. 404, Subpt. P, App. § 1.04 concerning disorders of the spine, is as follows:

> 1.04 Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness,

and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Id.

The ALJ did not err in concluding that Plaintiff does not meet Listing 1.04. Following Plaintiff's August of 2004 surgery, he had negative straight-leg raising tests, and the record showed no evidence of high-grade stenosis, new herniation or spinal arachnoiditis. (A.R. 222-223, 568, 579). Further, Dr. Humm, the medical expert who responded to the ALJ's post-hearing interrogatories, concluded that Plaintiff's impairments "do not meet the requirements of any of the Listings." (A.R. 761); see Ostronski v. Chater, 94 F.3d 413, 417 (8th Cir. 1996) ("The ALJ is entitled to rely on the opinions of reviewing physicians when considering whether the claimant meets the requirements of a listed impairment.") (citation omitted). Dr. Humm specifically considered Listing 1.04, and found that Plaintiff's impairments did not fall within 1.04 because there was "no evidence of weakness or gait impairment." (A.R. 761).

Plaintiff argues that because doctors found that he had an "antalgic gait,"[3] he meets the criteria of subsection 1.04(c). To meet subsection 1.04(c), a claimant must be unable to "ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. § 1.04(c). Ineffective ambulation is defined as having "insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. § 1.00(B)(2)(b). Examples of ineffective

---

[3] In July and August of 2005, Dr. Christopher Dietrich found that Plaintiff's gait was "somewhat antalgic but [Plaintiff] moves around without significant distress." (A.R. 576, 579). Dr. Dietrich further noted that Plaintiff could walk on his toes and heels without difficulty, and was able to squat. (A.R. 576). In July of 2006, Dr. Steven Frost noted that Plaintiff had an antalgic gait. (A.R. 604).

11

ambulation include:

> "the inability to walk without the use of a walker, two crutches or canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail."

Id. Dr. Humm considered the above-noted examples of ineffective ambulation and found that Plaintiff had the ability to engage in all of the described activities. (A.R. 766-67). The Court thus finds that substantial evidence support's the ALJ's findings that Plaintiff's impairments do not meet or equal any impairment laid out in the Listing of Impairments.

## C. Assessment of Plaintiff's Residual Functional Capacity as of October 4, 2005

The ALJ found that beginning on October 4, 2005, Plaintiff possessed the residual functional capacity to perform sedentary work with certain restrictions. (A.R. 22). In doing so, the ALJ concluded that the "[Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, or functionally limiting effects of these symptoms are not credible beginning on October 4, 2005, to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment . . ." Plaintiff now contends that the ALJ's credibility assessment of Plaintiff's complaints of disabling pain was unsupported by substantial evidence.

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). When evaluating subjective complaints, an ALJ must consider "objective medical evidence, as well as any evidence relating to the so-called Polaski factors, namely: (I) a claimant's daily activities; (ii) the

12

duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) dosage, effectiveness, and side effects of medication; and (v) functional restrictions." Guilliams v. Barnhart, 393 F.3d 798, 801-02 (8th Cir. 2005) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). Although an ALJ may discount a claimant's subjective complaints if there are "inconsistencies in the record as a whole," the ALJ should "'detail the reasons for discrediting the testimony and set forth the inconsistencies found." Id. (citing Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003)).

"While an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." Baker v. Barnhart, 457 F.3d 882, 892-93 (8th Cir. 2006) (internal citations omitted). When an ALJ "explicitly discredits a claimant's testimony and gives good reason for doing so, [the court] will normally defer to that judgment." Finch v. Astrue, 547 F.3d 933, 935 (2008) (internal quotations omitted). Here, the ALJ considered both Plaintiff's statements *and* the objective medical evidence before reaching the conclusion that Plaintiff's complaints were not credible. (A.R. 23). The ALJ noted inconsistencies between Plaintiff's statements and the administrative record.[4] During the hearing, Plaintiff testified that his pain

---

[4] This Court has conducted a detailed review of the record and observed that the ALJ cited a couple of inconsistencies between Plaintiff's testimony and the administrative record that do not actually exist. The ALJ stated that Plaintiff claimed an inability to drive due to pain and the medication he was taking. (A.R. 24). The Plaintiff did not testify that he was unable to drive, nor does such an allegation appear in the record. The ALJ noted that Plaintiff reported he would walk 400 meters, but testified that he could only walk 100 feet. However, Plaintiff's actual testimony was that he *used* to be able to walk 400 meters, not that he could do so now. These errors are relatively minor and do not alter the fact that objective medical evidence indicated that Plaintiff had the capacity to work, and Plaintiff's testimony about his symptoms

13

medications used to make him "real drowsy." (A.R. 814). As the ALJ noted, however, "the medical records, such as office treatment notes, do not corroborate those allegations," as Plaintiff never mentioned these side effects to his physicians and he denied any such side effects in his disability report. (A.R. 24). Further, the ALJ pointed out that although Plaintiff alleged disabling pain symptoms, no treating or examining physician ever concluded that Plaintiff was disabled or that Plaintiff had work limitations exceeding those identified by the ALJ. (A.R. 24); see Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010) (explaining that one factor to consider in determining a claimant's credibility is the "absence of objective medical evidence to support the [claimant's] complaints."); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and her complaints). Finally, the ALJ took issue with Plaintiff's testimony that he had to lie down several times throughout the day to relieve his back pain. The ALJ pointed out that the record contained no statement by a physician that Plaintiff's medical condition requires him to lie down to relieve pain. See generally Patrick v. Barnhart, 323 F.3d 592 (8th Cir. 2003) (ALJ properly discounted claimant's need to lie down based on, among other things, the lack of medical evidence to support her claim).

Plaintiff asserts that the ALJ, in making his credibility determination, should have explicitly considered Plaintiff's work history and the testimony of lay witness Becky Ritter. While Plaintiff is correct that Polaski requires an ALJ to take into account claimant's prior work record, the "ALJ's decision need not include a discussion of how every Polaski factor relates to

---

and limitations did not jibe with the objective medical findings.

the claimant's credibility." Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007). Plaintiff's claim that the ALJ had to explicitly consider Ritter's testimony also lacks merit. Although it is preferable that an ALJ specifically explain the reasons for rejecting the testimony of a lay witness, the "failure to do so does not always result in a remand." Willcockson v. Astrue, 540 F.3d 878, 880 (8th Cir. 2008). Where the lay witness testimony is the same as the evidence the ALJ rejected for reasons explained in the opinion, the Eighth Circuit has "refused to remand based on an arguable deficiency in opinion-writing technique that had no effect on the outcome of the case." Id. (internal quotation marks and citation omitted) (citing Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995)); see also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (ALJ's failure to make a specific finding concerning rejection of claimant's wife's testimony did not require reversal because the ALJ's conclusion was supported by substantial evidence). Here, Ritter's testimony was essentially the same as Plaintiff's, which the ALJ rejected for reasons explained in his opinion and supported by substantial evidence. Thus, this Court need not remand the case to enable the ALJ to explain why he rejected Becky Ritter's testimony; those reasons would be the same as why the ALJ did not rely on certain portions of Plaintiff's testimony. The Court finds that substantial evidence supported the ALJ's credibility determination.

Plaintiff also argues that the ALJ failed to weigh physician opinions properly in determining that Plaintiff was no longer disabled as of October 4, 2005. Specifically, Plaintiff claims that it was "logically impossible" for the ALJ to first find Plaintiff disabled, yet then find that this disability ended, when both of these determinations were based on the same medical evidence. This argument does not justify reversal under the circumstances. In finding Plaintiff

15

disabled from June 2, 2003 through October 3, 2005, the ALJ noted that Plaintiff underwent "multiple surgical procedures and rehabilitation efforts during this time period," and that until at least July of 2005, it was unclear whether Plaintiff's August 9, 2004 fusion surgery had fully healed. (A.R. 20).

By October 4, 2005, however, Plaintiff's fusion had healed. Dr. Rand Schleusener, Plaintiff's treating physician, had found that Plaintiff had reached "maximum medical improvement" and that Plaintiff was "capable of sedentary work with largely some light duty work, [with the ability] to change position frequently, and no prolonged lifting of more than about ten pounds." (A.R. 437). In concluding that Plaintiff was no longer disabled as of October 4, 2005, the ALJ appropriately gave substantial weight to Dr. Schleusener's findings. See House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.") (internal quotation omitted); Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000) ("The opinion of a treating physician is accorded special deference under the social security regulations."). In the present case, Dr. Schleusener's findings were well-supported by x-rays, a July 2005 CT scan, and physical examinations and assessments of Plaintiff. (A.R. 222-23, 442, 450).

The ALJ's determination that Plaintiff was no longer disabled as of October 4, 2005, is further supported by additional evidence in the record. As noted previously, State agency Drs. Whittle and Entwistle both concluded in 2006 that Plaintiff could engage in "sedentary-light work" with certain restrictions. (A.R. 161, 183). Dr. Humm, who examined Plaintiff's medical records in 2008, agreed that Plaintiff could engage in sedentary work with certain restrictions.

(A.R. 762-63). See Harvey v. Barnhart, 368 F.3d 1013, 1016 (8th Cir. 2004) (explaining that while it is improper for an ALJ to rely solely on the opinion of a non-examining physician, such an opinion may be considered by the ALJ as part of the record as a whole). The abundance of medical evidence provides substantial evidence that the ALJ was justified in his determination of Plaintiff's disability and residual functional capacity. See generally Moore v. Astrue, No. 10-1126, 2010 Westlaw 4103693 (8th Cir. Oct. 20, 2010) ("[T]he record must contain at least some medical evidence to support the ALJ's determination of residual functional capacity.").

Plaintiff also argues that substantial evidence did not support a finding of medical improvement sufficient to permit sustained work activity. In making this argument, Plaintiff relies on Burress v. Apfel, 141 F.3d 875 (8th Cir. 1998). In Burress, the ALJ found that the claimant was disabled for a closed period of time, but that this disability ended when the claimant experienced medical improvement. Id. The Eighth Circuit reversed the ALJ's decision, holding that the ALJ's finding of medical improvement was not supported by substantial evidence. Id. at 881. Plaintiff's reliance on Burress is misplaced, however, as it differs from the present case in two important ways. First, the ALJ in Burress did not "specifically identify or otherwise explain" why he found medical improvement on a certain date. Id. at 879. Second, the medical reports the ALJ relied on in finding medical improvement were all dated subsequent to the closed period of disability. Here, the ALJ identified Dr. Schleusener's October 4, 2005 medical opinion as the very reason for finding medical improvement on this specific date. In short, substantial evidence supports the ALJ's findings, and there are material differences between this case and Burress.

## D. Step Five Findings

17

Plaintiff argues that the ALJ's step five findings were not supported by substantial evidence and critiques the testimony of vocational expert Jerry Gravatt as based on a flawed hypothetical concerning Plaintiff's residual functional capacity. "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005) (internal quotations omitted). "A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence." Haggard v. Apfel, 175 F.3d 591, 595 (1999) (citations omitted). The testimony of a vocational expert who responds to a hypothetical question based only on the opinions of consulting physicians does not constitute substantial evidence "upon which to deny benefits," however. See Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

Here, as explained in Section III C of this opinion and order, the ALJ's residual functional capacity assessment was supported by substantial evidence. Further, the ALJ included only those restrictions supported by the record as a whole in the hypothetical posed to the vocational expert. See Gragg v. Astrue, 615 F.3d 932, 941 (8th Cir. 2010) ("The hypothetical question need only include those impairments and limitations found credible by the ALJ.") (internal quotations omitted). The vocational expert's testimony provided substantial evidence upon which the ALJ properly based his opinion that Plaintiff is "able to perform a significant number of jobs in the national economy." (A.R. 26).

## IV. Conclusion

It is therefore

ORDERED that the Order of the Commissioner is affirmed and that final judgment

hereby enters affirming the decision of the Commissioner.

Dated October 27, 2010.

BY THE COURT:

/s/ Roberto A. Lange
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE